Case 4:16-cv-00770 Document 90 Filed on 02/15/19 in TXSD Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
February 19, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEROD HOBBS, RONALD LEE, JORDAN ARROYO and ARLEN JONES, Individually and behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EVO INCORPORATED, JONATHAN JAMES RENTON THURSBY, MAURICE McBRIDE, SAM COPEMAN, and FRANCIS NEILL, <br><br> Defendants. | CIVIL ACTION NO. H-16-770 |

## **MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge, upon referral from the District Judge, is Defendant Maurice McBride's Motion for Summary Judgment and Request for Sanctions (Document No. 73). Having considered the Motion, Plaintiffs' Response (Document No. 78), Defendant's Reply (Document No. 81), and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be DENIED.

I. Background

Plaintiffs Jerod Hobbs ("Hobbs"), Ronald Lee ("Lee"), Jordan Arroyo ("Arroyo"), and Arlen Jones ("Jones"), individually and on behalf of all other similarly-situated Field Engineers, filed the instant collective action,[1] against defendant EVO Incorporated ("EVO"), Jonathan James Renton

---

[1] The Court certified the instant action as a collective action under 29 U.S.C. § 216(b). (Document No. 59). To date, no other plaintiffs have joined the instant action.

Thursby ("Thursby"), Maurice McBride ("McBride"), Sam Copeman ("Copeman") and Francis Neill ("Neill"), collectively referred to as ("Defendants"). Plaintiffs allege that they were misclassified as exempt employees and were not paid overtime wages for the time they worked more than forty hours a week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq. See* First Amended Original Complaint (Document No. 48, pp. 1-15). Plaintiffs further allege that Defendants acted willfully in failing to pay overtime wages in violation of the FLSA. *See id.* at 15-16. Defendants generally deny that they violated any provision of the FLSA and further deny that they acted willfully in failing to pay Plaintiffs in accordance with the FLSA. *See* (Documents Nos. 50 and 55).

EVO provides diagnostic information to its customers through observation of wellbores, pipelines, and other oil and gas exploration and production facilities, primarily through the use of video cameras. Plaintiffs are current or former employees of EVO, working as Field Engineers. Plaintiffs allege that McBride "was the chief executive officer of EVO Incorporated. This defendant acted directly and/or indirectly in the interests of EVO Incorporated in relation to Plaintiffs' employment with EVO Incorporated. This defendant has and had continuous and ongoing involvement in managerial responsibilities and operational control of EVO Incorporated, including decisions regarding work schedules and rate and method of compensation." First Amended Complaint (Document No. 48, ¶ 41). Plaintiffs allege that they had an employer-employee relationship with McBride within the meaning of the FLSA, and that he is jointly and severally liable to Plaintiffs under the FLSA for unpaid overtime compensation. McBride has moved for summary judgment, arguing that Plaintiffs have failed to offer any evidence to support their claim that he qualifies as an "employer" under the FLSA.

II. Applicable law

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The substantive law governing the claim at issue determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *see Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be admissible at trial. *See Celotex*, 477 U.S. at 324. In ruling on summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

The FLSA requires employers to pay time and a half for each hour that an employee works in excess of 40 hours per week, 29 U.S.C. § 207(a), and creates a cause of action for employees against employers that violate these requirements. 29 U.S.C. § 216(b). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Where both a corporation and a corporate officer satisfy the definition of "employer" under the FLSA, the officer and the corporation are jointly and severally liable for unpaid overtime wages. *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012)("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies."). To determine whether a there is an employer/employee relationship, the Court applies the "economic realities" test described by the Fifth Circuit in *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). *Gray* instructs that, to determine whether the alleged employer had operational control over the employees, the Court considers whether the evidence shows that the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (quoting *Williams*, 595 F.3d at 620). No single factor is dispositive, and "a party need not establish each element in every case." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). While each factor need not be present to establish an individual's employer status under the FLSA, the Fifth Circuit in *Gray* observed that "individuals ordinarily are shielded from personal liability when they do business in a corporate form, and, it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA." *Gray*, 678 F.3d at 356-57 (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 168 F.3d 668, 677

4

(1st Cir. 1998). Simply put: the Fifth Circuit has "decline[d] to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company." *Id.*

III. Discussion

Here, as explained below, McBride has failed to satisfy his burden on summary judgment[2] to demonstrate that there either is no genuine issue of material fact, or there is an absence of evidence, regarding whether McBride is an employer as defined under the FLSA. McBride resides in Scotland, in the United Kingdom. (Document No. 73-1, p. 3). He is self-employed. His business, MMB Associates, is a corporate management business. (Document No. 73-1, pp 4-5). McBride is chairman of the board, a director, and a shareholder of EV Holdings and EV Finco Ltd, the parent organizations of EVO. (Document No. 73-1, p. 7; Document No. 73-6, p. 3-4). According to McBride, he assists with board meetings and general corporate structure and governance. (Document No. 72-6, pp. 3-4). In his declaration, McBride states that "[a]s a Non-Executive Chairman, I am not involved in the day to day business operations of the businesses. Moreover, I am not, nor have I ever been, a director of E.V. Offshore Limited or its subsidiaries, which includes EVO Incorporated. Starting in April 2015, I assisted with the management of E.V. Offshore Limited

---

[2] All the evidence for and against McBride's status as an "employer" is contained in the March 6, 2018, deposition of McBride (Document No. 73-1, 1-15), the February 6, 2018 deposition of Arroyo (Document No. 73-2, p. 2-15), the February 5, 2018, deposition of Jones (Document No. 73-3, p. 2-17), the February 5, 2018, deposition of Lee (Document No. 73-4, p. 2-9), the February 6, 2018, deposition of Hobbs (Document No. 73-5, p. 2-17), declaration of McBride (Document No. 73-6, p. 2-5), the May 8, 2018, deposition of Troy Sutherlin (Document No. 73-7, p. 2-19), Lee Offer (Document No. 73-8, p. 2), March 7, 2018, deposition of Thorsby (Document No. 78-5, 2-7); and Declaration of Troy Sutherlin (Document No. 78-6, p.2-4).

for nine months while it searched for a new chief executive officer." (Document No. 72-6, p. 4). McBride testified that typically he was not involved in human-resource decisions. (Document No. 73-1, p. 6). McBride testified that it was not important for him, as chairman of the board, to know whether or not directors were hiring or firing employees of subsidiary corporations. (Document No. 73-1, p. 11-12). He added that such decisions are made at a "local level, not at a Holdings board level. So there are people who would typically do the hiring and firing, as you describe it, would be at a local level." (Document No. 73-1, p. 12). With respect to EVO, McBride denied that he hired or fired, set work schedules, set compensation, or maintained employment records for the named plaintiffs or any other field engineers. (Document No. 73-1, p. 13; Document No. 73-6, p. 4). Plaintiffs Arroyo, Jones, and Lee each testified at their respective depositions that they did not know McBride, and had not talked to or communicated with him about any aspect of their employment, including hiring, salary, compensation, job duties, time sheets, work schedules, or personnel file. They testified that he did not supervise their day-to-day work activities. (Document No. 73-2, pp. 11-12; Document No. 73-3, pp. 10-12; Document No. 73-4, pp. 3-6). Plaintiff Jones described McBride as "some upper class man with the company." (Document No. 73-4, pp. 10-11). Plaintiff Lee testified that he was aware of McBride. (Document No. 73-4, p. 4). Plaintiff Hobbs testified that he recalled seeing an email chain that included McBride relating to his approval of expenses submitted by a manager/vice president of EVO in Canada. (Document No. 73-5, p. 5, 7). None of the named Plaintiffs testified that they or other field engineers had been hired or fired by McBride. (Document No 73-2, p. 12; Document No. 73-3, p. 11; Document No. 73-4, p. 4). Rather, Plaintiffs identified Troy Sutherlin, North American land manager for EVO, as the individual who had recruited them to work as field engineers. (Document No. 73-2, pp. 5, 7; Document No. 73-3, pp.

3-4; Document No. 73-5, pp. 11-12). Sutherlin, at his deposition, testified that he hired Plaintiffs Hobbs, Jones, and Arroyo, and that he recommended that Plaintiff Lee be hired. (Document No. 73-7, pp. 4-5, 12-14 & Document No. 73-8, p. 2).

But in response to this evidence, Plaintiffs argue that McBride, as interim CEO of EVO, was involved in the day-to-day management of the company. With respect to the first factor of hiring and firing, Plaintiffs have submitted the deposition testimony of Defendant Thursby that he and McBride traveled to the United States, as part of a cost-saving process, to terminate employees. (Document No. 78-5, p. 6). Plaintiffs also submitted the declaration of their supervisor Sutherlin, who states in pertinent part that he "answered directly to Maurice McBride when he was interim CEO of EVO Incorporated." To support their claim that McBride played a role in hiring and firing, Sutherlin's declaration states in pertinent part:

> 4. Maurice McBride acted as interim chief executive officer for EVO Incorporated from June or July 2015 until approximately April, 2016. I answered directly to Maurice McBride when he was interim CEO of EVO Incorporated.
>
> 5. Maurice McBride traveled to and from the United Kingdom to the United States, specifically Houston as interim CEO and also as Chairman of EVO Incorporated, and was involved in making hiring and firing decisions for EVO Incorporated. He also traveled once to Ardmore, Oklahoma for EVO Incorporated. In November or December of 2014, Maurice McBride was present in the offices of EVO Incorporated in Houston, Harris County, Texas for several days and was involved in interviewing applicants for North American president for EVO Incorporated.
>
>     \*      \*
>
> 7. On February 28, 2016 Maurice McBride was in the offices of EVO Incorporated in Houston, Harris County, Texas with me. He advised me in that meeting that I was laid off. (Document No. 78-6, p. 3-4).

7

There is a conflict in the evidence about McBride's ultimate role or authority in making hiring and firing decisions. Thus, there appears to be a genuine issue of material fact whether McBride had decision-making authority over hiring or firing decisions for EVO. This factor weighs against summary judgment.

As to whether McBride supervised and controlled employee work schedules or conditions of employment, McBride points to the testimony of the Plaintiffs that McBride was not their direct supervisor, and that he did not control their work schedules. *See, e.g.*, (Document No. 73-2, p. 2; Document No. 73-3, pp. 11-12; Document No. 73-4, pp. 4-6). McBride points to the testimony of Sutherlin that he supervised Plaintiffs Hobbs, Jones, and Arroyo; set the schedule for Plaintiffs Hobbs and Jones, and that he evaluated Plaintiff Arroyo's performance and recommended that he be let go from his position. (Document No. 73-7, pp. 9-12, 16). Sutherlin also testified that he handled discipline issues. (Document No. 73-7, pp. 15, 17). But Sutherlin, in his declaration, states that while he "had responsibility in the day to day business of the company" and "would go to job sites and was over sales and operations," he "did not oversee accounting, billing or HR. Payroll decisions were made by upper management, including decisions as to classification, payroll and overtime pay." (Document No. 78-6, p. 3). In addition, Sutherlin states that "[d]uring the time Maurice McBride acted as interim CEO of EVO Incorporated, he was involved in day-to-day management of the company. He would sign off on my expenses. He would also sign off on monthly expense reports, vacation and other expenses for other employees. He would have weekly telephone conferences with the managers of each region, including the North American land region to discuss operational decisions which included personnel discussions. He had the final say for

authority for expenditures (AFE) expenses when he was interim CEO for EVO Incorporated. All managers reported to Maurice McBride when he was interim CEO." (Document No. 78-6, p. 3). Thus, while McBride may not have been involved in setting day-to-day work schedules and directly supervising the field engineers, there is a genuine issue of material fact whether McBride was involved in establishing the field engineers' conditions of employment and approving their day-to-day expenses, thereby exerting ultimate authority and control over their activities. This factor weighs against summary judgment.

The third factor the Court considers is whether McBride determined the rate or method of payment. As discussed above, McBride testified that he did not set compensation, including salaries or components of pay. (Document No. 73-1, p. 13). He also points to testimony by the Plaintiffs that all discussions concerning their pay were with Sutherlin. *See, e.g.*, (Document No. 73-2, pp. 5, 7, 13) (Document No. 73-5, pp. 11-12); (Document No. 72-5, pp. 6-8).

Plaintiffs, in response, again point to Sutherlin's Declaration, wherein he states that "[p]ayroll decisions were made by upper management, including decisions as to classification, payroll and overtime pay." (Document No. 78-6, p. 3). They also emphasize that Sutherlin testified that, during the time McBride was interim CEO of EVO, Sutherlin reported to him as a manager, and that McBride signed off on his expenses, and had final say for all expenditures. (Document No. 78-6, 3). Plaintiffs have established that, even though McBride may not have directly communicated with or directly supervised field engineers, there exists a genuine issue of material fact regarding whether he in fact exerted operational and financial control over them. This factor weighs against summary judgment.

The last factor is whether there is evidence that McBride maintained employment records. McBride testified that he did not maintain employment records. (Document No. 73-1, p.13). Plaintiffs point to no evidence about McBride regarding this factor. This factor weighs in favor of summary judgment.

Here, applying the economic-reality test to McBride, the summary judgment evidence demonstrates a genuine issue of material fact whether McBride was sufficiently involved in the operational and economic control of EVO's field engineers to make him jointly and severally liable for FLSA violations allegedly committed by EVO. Viewed in the light most favorable to the Plaintiffs, a reasonable jury could conclude that McBride, while interim CEO of EVO, had the authority to make hiring and firing decisions; and that he made decisions regarding salaries, bonuses, and control of the field engineers' conditions of employment, thereby making him an "employer" as defined under the FLSA.

IV. Conclusion and Recommendation

The summary judgment evidence presents genuine issues of material fact regarding whether McBride was an employer under the FLSA. The Magistrate Judge therefore

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 73) be DENIED. Thus, to the extent that McBride seeks reasonable fees, costs, and expenses associated with defending Plaintiffs' claims, the undersigned also finds that the request is not well-taken.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking

factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 15th day of February, 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE