United States District Court
Southern District of Texas
**ENTERED**
February 19, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEROD HOBBS, RONALD LEE, JORDAN ARROYO and ARLEN JONES, Individually and behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EVO INCORPORATED, JONATHAN JAMES RENTON THORSBY, MAURICE McBRIDE, SAM COPEMAN, and FRANCIS NEILL, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. H-16-770 |

**MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge, upon referral from the District Judge, is Defendant Sam Copeman's Motion for Summary Judgment and Request for Sanctions (Document No. 72). Having considered the Motion, Plaintiffs' Response (Document No. 78), Defendant's Reply (Document No. 81), and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be DENIED.

I. Background

Plaintiffs Jerod Hobbs ("Hobbs"), Ronald Lee ("Lee"), Jordan Arroyo ("Arroyo"), and Arlen Jones ("Jones"), individually and on behalf of all other similarly-situated Field Engineers, filed the instant collective action,[1] against defendant EVO Incorporated ("EVO"), Jonathan James Renton

---

[1] The Court certified the instant action as a collective action under 29 U.S.C. § 216(b). (Document No. 59). To date, no other plaintiffs have joined the instant action.

Thursby ("Thursby"), Maurice McBride ("McBride"), Sam Copeman ("Copeman") and Francis Neill ("Neill"), collectively referred to as ("Defendants"). Plaintiffs allege that they were misclassified as exempt employees and were not paid overtime wages for the time they worked more than forty hours a week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq. See* First Amended Original Complaint (Document No. 48, pp. 1-15). Plaintiffs further allege that Defendants acted willfully in failing to pay overtime wages in violation of the FLSA. *See id.* at 15-16. Defendants generally deny that they violated any provision of the FLSA and further deny that they acted willfully in failing to pay Plaintiffs in accordance with the FLSA. *See* Documents Nos. 50 and 55.

EVO provides diagnostic information to its customers through observation of wellbores, pipelines, and other oil and gas exploration and production facilities, primarily through the use of video cameras. Plaintiffs are current or former employees of EVO, working as Field Engineers. Plaintiffs allege that Copeman "was the chief financial officer of EVO Incorporated. This defendant acted directly and/or indirectly in the interests of EVO Incorporated in relation to Plaintiffs' employment with EVO Incorporated. This defendant has and had continuous and ongoing involvement in managerial responsibilities and operational control of EVO Incorporated, including decisions regarding work schedules and rate and method of compensation." First Amended Complaint (Document No. 48, ¶ 42). Plaintiffs allege that they had an employer-employee relationship with Copeman within the meaning of the FLSA, and that he is jointly and severally liable to Plaintiffs under the FLSA for unpaid overtime compensation. Copeman has moved for summary judgment, arguing that Plaintiffs have failed to offer any evidence to support their claim that he qualifies as an "employer" under the FLSA.

II. Applicable law

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The substantive law governing the claim at issue determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *see Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be admissible at trial. *See Celotex*, 477 U.S. at 324. In ruling on summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

The FLSA requires employers to pay time and a half for each hour that an employee works in excess of 40 hours per week, 29 U.S.C. § 207(a), and creates a cause of action for employees against employers that violate these requirements. 29 U.S.C. § 216(b). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Where both a corporation and a corporate officer satisfy the definition of "employer" under the FLSA, the officer and the corporation are jointly and severally liable for unpaid overtime wages. *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012)("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies."). To determine whether a there is an employer/employee relationship, the Court applies the "economic realities" test described by the Fifth Circuit in *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). *Gray* instructs that to determine whether the alleged employer had operational control over the employees, the Court considers whether the evidence shows that the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (quoting *Williams*, 595 F.3d at 620). No single factor is dispositive, and "a party need not establish each element in every case." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). While each factor need not be present to establish an individual's employer status under the FLSA, the Fifth Circuit in *Gray* observed that "individuals ordinarily are shielded from personal liability when they do business in a corporate form, and, it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA." *Gray*, 678 F.3d at 356-57 (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 168 F.3d 668, 677

(1st Cir. 1998). Simply put: the Fifth Circuit has "decline[d] to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company." *Id.*

III. Discussion

Here, as explained below, Copeman has failed to satisfy his burden on summary judgment[2] to demonstrate that there either is no genuine issue of material fact, or there is an absence of evidence, regarding whether Copeman is an employer as defined under the FLSA. Copeman began working for EVO in Norwich, United Kingdom in 2010, and in 2014, became the Chief Financial Officer ("CFO") of EV Holdings Limited ("EV Holdings") and EV Finch Limited ("EV Finch"). He was President of EVO for a short period starting in May 2015. In 2016, he resigned. (Document No. 72-1, p.3-4, 8, 12; Document No. 72-6, p.3-4). Copeman testified that his responsibilities as CFO were formulating business plans, producing annual budgets, understanding and explaining variances against the budget in the company's annual performance, ensuring sufficient financing for the company, and directly supervising the financial controllers. (Document No. 72-1, p. 9; Document No. 72-6, p. 3). With respect to EVO, Copeman testified that as President of EVO, he did not have the power to fire employees or to set wages, and that he did not maintain employment

---

[2] All the evidence for and against Copeman's status as an "employer" is contained in the April 18, 2018, deposition of Copeman (Document No. 72-1, 3-13), the February 6, 2018 deposition of Arroyo (Document No. 88, p. 1-18), the February 5, 2018, deposition of Jones (Document No. 72-3, p. 3-11), the February 5, 2018, deposition of Lee (Document No. 72-4, p. 3-6), the February 6, 2018, deposition of Hobbs (Document No. 72-5, p. 3-23), the amended declaration of Copeman (Document No. 72-6, p. 2-6), the May 8, 2018, deposition of Sutherlin (Document No. 72-7, p. 3-16), Offer letter to Lee signed by Sutherlin (Document No. 72-8, p. 2), and the Declaration of Aimee Mouton (Document No. 78-3, p.2-4).

records. (Document No. 72-1, p. 9-11, Document No. 72-6, p. 4). Plaintiffs Hobbs, Lee, Arroyo and Jones each testified at their respective depositions that they did not know Copeman, and had never talked to or communicated with him about any aspect of their employment, including salary, compensation, job duties, time sheets, or work schedules. (Document No. 88, p. 10-11; Document No. 72-3, p.7, 8-9; Document No. 72-4, p. 5; Document No. 72-5, p. 10). Plaintiffs Hobbs, Lee, Arroyo and Jones testified that Copeman did not hire them. (Document No. 88, p. 8; Document No. 72-3, p. 7; Document No. 72-4, p. 4; Document No. 72-5, p. 10). Rather, Plaintiffs identified Troy Sutherlin, North American land manager for EVO, as the individual who had recruited and hired them to work as field engineers. (Document No. 88, p. 5-9; Document No. 72-3, p. 3-4; Document No. 72-5, p. 6-8). When questioned at their respective depositions about whether they had been fired by Copeman or were aware of his firing of other field engineers, each responded in the negative. (Document No. 72.3, p. 7-8; Document No. 72.-4, p. 4). Troy Sutherlin, at his deposition, testified that he hired Plaintiffs Hobbs, Jones, and Arroyo, and that he recommended that Plaintiff Lee be hired. (Document No. 72-7, p. 3-5, 11-13 & Document No. 72-8, p. 2).

But in response to this evidence, Plaintiffs submitted the declaration of EVO's controller Aimee Mouton, whom Copeman directly supervised, to support their claim that Copeman played a role in hiring and firing. Mouton states that Copeman "advised me that, while Frances Neill was the CEO, he and Francis Neill were the only people who could make decisions regarding hiring and firing employees, including field engineers." (Document No. 78-3, p. 3). She testified that, during his bimonthly visits to the Houston EVO office, Copeman was involved in making human-resources decisions affecting field engineers. *See id.* There is a conflict in the evidence about Copeman's ultimate role or authority in making hiring and firing decisions. Thus, there appears to be a genuine

issue of material fact whether Copeman had ultimate decision-making authority over hiring or firing field engineers.

As to whether Copeman supervised and controlled employee work schedules or conditions of employment, Copeman points to the testimony of the Plaintiffs that Copeman was not their direct supervisor, and that he did not control their work schedules. *See, e.g.*, (Document No. 88-1, p. 3, 16-17); (Document No. 72-3, pp. 6, 8, 10-11); (Document No. 72-3, p. 6, 10-11); (Document No. 72-4, p. 5); (Document No. 72-5, p. 5, 9). Troy Sutherlin testified that he supervised, set schedules, and conducted employment reviews for Plaintiffs Hobbs and Jones. (Document No. 72-7, p. 4-5).

But Mouton testified that Copeman "wrote and implemented the human resources rules for EVO" and that he was engaged in regular telephone conferences with Sutherlin regarding human-resource decisions for Plaintiffs and approved their monthly expense reports. (Document No. 78-3). Thus, although he may not have been involved in setting day-to-day work schedules and directly supervising the field engineers, there is a genuine issue of material fact whether Copeman was involved in establishing the field engineers' conditions of employment and approving their day-to-day expenses, thereby exerting ultimate authority and control over their activities..

The third factor the Court considers is whether Copeman determined the rate or method of payment. As discussed above, Copeman testified that, as President of EVO, he did not set wages. (Document No. 72-1, p. 9). He points to testimony by the Plaintiffs that they communicated with Sutherlin, and not with Copeman, about salary or rate of pay. *See, e.g.*, (Document No. 88-1, pp. 5-6, 10-11, 16); (Document No. 72-3, p. 9); (Document No. 72-5, p. 6-8, 7-8).

Plaintiffs, in response, again point to Aimee Mouton's Declaration, wherein she states that Copeman in fact made decisions regarding financial and payroll issues for EVO. She states that

7

"[s]ome of these decisions dealt with field engineers, including those related to Jerod Hobbs, Arlen Jones and Jordan Arroyo," and that Copeman "was involved in determining salaries for employees, including field engineers." Aimee Mouton's declaration further states that Copeman would "sign off on expense reports, payroll and bonuses for EVO Incorporated" and that he "had authority over what was paid and was not paid for EVO Incorporated including payroll and bonuses for field engineers." (Document No. 78-3, p. 3-4). She states that the monthly payroll records for field engineers were sent to Copeman for his approval. *See id.* Plaintiffs have established that, even though Copeman may not have directly communicated with or directly supervised field engineers, there exists a genuine issue of material fact regarding whether he in fact exerted operational and financial control over them.

The last factor is whether there is evidence that Copeman maintained employment records. Copeman testified that he did not maintain employment records. (Document No. 72-1, p. 9). Plaintiffs Jones and Lee both testified that neither had discussions with Copeman about their personnel file. (Document No. 72-3, p. 9; Document No. 72-4, p. 5). But Mouton testified that she kept the field engineers' employment records "directly under Sam Copeman's supervision," and that almost everything she did as controller required Copeman's approval. (Document 78-3).

Here, applying the economic-reality test to Copeman, the summary judgment evidence demonstrates a genuine issue of material fact whether Copeman was sufficiently involved in the operational and economic control of EVO's field engineers to make him jointly and severally liable for FLSA violations allegedly committed by EVO. Viewed in the light most favorable to the plaintiffs, a reasonable jury could conclude that Copeman had the authority to make hiring and firing decisions; that he made decisions regarding salaries, bonuses, and control of the field engineers'

conditions of employment; and that he supervised the maintenance of the Plaintiffs' employment records, thereby making him an "employer" as defined under the FLSA.

IV. Conclusion and Recommendation

The summary judgment evidence presents genuine issues of material fact regarding whether Copeman was an employer under the FLSA. The Magistrate Judge therefore

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 72) be DENIED. Thus, to the extent that Copeman seeks reasonable fees, costs, and expenses associated with defending Plaintiffs' claims, the undersigned also finds that the request is not well-taken.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); Ware v. King, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 15th day of February, 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

9