United States District Court
Southern District of Texas

**ENTERED**

February 19, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEROD HOBBS, RONALD LEE, <br> JORDAN ARROYO and ARLEN JONES, <br> Individually and  behalf of others similarly <br> situated, <br><br>      Plaintiffs, <br><br> v. <br> EVO INCORPORATED, <br> JONATHAN JAMES RENTON THORSBY, <br> MAURICE McBRIDE, SAM COPEMAN, <br> and FRANCIS NEILL, <br><br>      Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> §      CIVIL ACTION NO. H-16-770 <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Before the Magistrate Judge, upon referral from the District Judge, is Defendant EVO Incorporated ("EVO" or the "Company"), Jonathan James Renton Thursby ("Thursby"), Maurice McBride ("McBride"), Sam Copeman ("Copeman"), and Francis Neill ("Neill"), (collectively "Defendants") Motion for Summary Judgment (Document No. 74), and Defendants' Motion for Partial Summary Judgment on Statute of Limitations (In the Alternative, if Necessary, to their Motions for Summary Judgment)(Document No. 75).   Having considered the Motions, the responses, the replies, the summary-judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motion for Summary Judgment be DENIED and that Defendants' Partial Motion for Summary Judgment be GRANTED.

## I. Background

Plaintiffs Jerod Hobbs ("Hobbs"), Ronald Lee ("Lee"), Jordan Arroyo ("Arroyo"), and Arlen Jones ("Jones"), individually and on behalf of all other similarly situated Field Engineers, filed the instant collective action,[1] against Defendants, alleging they were misclassified as exempt employees and were not paid overtime wages for the time they worked more than forty hours a week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.* First Amended Original Complaint (Document No. 48, p. 1-15). Plaintiffs further allege that Defendants acted willfully in failing to pay overtime wages in violation of the FLSA. (Document No. 48, p. 15-16). Defendants generally deny that they violated any provision of the FLSA and further deny that they acted willfully in failing to pay Plaintiffs in accordance with the FLSA. (Document Nos. 50 and 55).

EVO provides diagnostic information to its customers through observation of wellbores, pipelines, and other oil and gas exploration and production facilities, primarily through the use of video cameras. Plaintiffs are current or former employees of EVO, working as Field Engineers. Defendants contend that Plaintiffs have failed to offer any evidence to support their claims that Defendants violated the FLSA by failing to pay them overtime. They further argue that Plaintiffs are/were properly classified as exempt from the FLSA overtime provisions under the administrative, highly-compensated, and outside-sales employee exemptions and, therefore, no overtime is due. Plaintiffs responded that Defendants have not established Plaintiffs' exempt status and therefore the motion should be denied. Defendants have also moved for partial summary judgment on the statute of limitation, contending that Plaintiffs have not and cannot present evidence that Defendants

---

[1] The Court certified the instant action as a collective action under 29 U.S.C. § 216(b). (Document No. 59). To date, no other plaintiffs have joined the instant action.

willfully violated the FLSA.  Plaintiffs argue that the three-year statute of limitations should apply and that the motion should be denied.

## II. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The substantive law governing the claim at issue determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).  The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus.Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986).  Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *see Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be admissible at trial. *See Celotex*, 477 U.S. at 324.  In ruling on summary judgment, a court may not

resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

## III. Defendants' Motion for Summary Judgment-Exemptions

The FLSA requires employers to pay time and a half for each hour that an employee works in excess of 40 hours, 29 U.S.C. § 207(a), and creates a cause of action against employers that violate these requirements. 29 U.S.C. § 216(b). "An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). If the plaintiff establishes a prima facie claim, the burden shifts to the defendant to either establish that he is exempt from the FLSA's requirements, or otherwise come forward with evidence disproving the plaintiff's alleged damages. *Id.*

Congress exempted certain classes of employees from FLSA coverage. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 352 (5th Cir. 2015)("Certain employees, however, are exempt from the overtime requirements [of the FLSA]."). Exemptions are defined by the Secretary of Labor at 29 C.F.R. § 541.0 *et. seq.* Examples of exempt employees include workers who are employed in an administrative capacity. *See* 29 U.S.C. § 213(a)(1)(exempting from § 207 "any employee employed in a bona fide executive, administrative, or professional capacity. . ."). Likewise, highly compensated employees who perform at least one of the duties of an executive,

administrative, or professional employee are exempt from the FLSA's overtime requirements, *see* 29 C.F.R. § 541.601, as are workers employed in outside sales, *see* 29 C.F.R. § 541.500(a)(1)-(2).

The employer bears the burden to establish the applicability of an exemption under the FLSA. *Chatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006). The question of how an employee spends his time working is a question of fact; but whether an employee's salary and duties ultimately satisfy an exemption is a question of law. *Zannikos*, 605 F.Appx at 352. (citing *Icile Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).  FLSA's exemptions must be given a "fair reading" rather than being construed narrowly against the employer.  *Encino Motorcars v. Navarro*, ___U.S.___, 138 S.Ct. 1134, 1142 (2018); *Carley v. Crest Pumping Technologies, L.L.C*, 890 F.3d 575, 579 (5th Cir. 2018).

### A. Administrative Exemption

To qualify as a bona-fide exempt administrative employee, the employee must (1) earn at least $455 per week; (2) primarily perform work directly related to the management or general business operations of the employer or the employer's customers; and (3) exercise discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a).  An employee's primary duty is not determined solely by his/her job title or by the amount of time spent performing exempt work.  *See* 29 C.F.R. § 541.2; 29 C.F.R. § 541.700(b). An employee's primary duty is "what [the employee] does that is of principal value to the employer." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990).  That determination "must be based on all the facts of a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).

5

With respect to the second element, "the pharse 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from "work involving repetitive operations with . . . hands, physical skill and energy," such as that done by "non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, [and] mechanics." 29 C.F.R. § 541.601(d). The regulations further provide that "[w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption." *Id.* § 541.201(b). In *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 336 (5th Cir. 2017), the Fifth Circuit explained the distinction between work related and unrelated to management or general business operations:

> [T]he relevant distinction is between those employees whose primary duty is administering the business affairs of the enterprise [and] those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market. Other circuits have thought to label this distinction as the administrative-production dichotomy, under which production employees (whose job it is to generate the product or service the business offers to the public) will not qualify for the exemption . . . . [T]he line between administrative and production jobs is not a clear one. . . .

6

To determine whether an employee's duties are directly related to the management or general business operations of the employer or employer's customers, a fact finder must not only determine the employee's duties, but must also determine "how the work directly relates to certain parts of the employer's business" or the employer's customers' businesses. *Id.* at 334. The interpretative guidance from the Department of Labor that accompanied the 2004 Regulations, including the discussion of the administration/production dichotomy in Administrator's Interpretation No. 2010-1, is helpful and informative in explaining how to determine whether an employee's primary duty falls within the purview of the FLSA's administrative exemption. That Administrator's Interpretation No. 2010-1 provides guidance and is persuasive authority. *Ford v. Houston Index. Sch. Dist.*, 97 F.Supp. 3d 866, 875 (S.D.Tex. 2015).

As for the third element regarding an employee's exercise of discretion and independent judgment with respect to matters of significance, the regulations provide that exercising discretion and independent judgment generally "involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).

> "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives;

> whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances."

*Id.* § 541.202(b). The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision, but an employee need not exercise final decision-making authority to meet this standard. *See* § 541.202(c); *Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e).

"The use of manuals, guidelines or other established procedures containing or relating to highly technical scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption." *Id.* § 541.704. "An employee cannot be considered to exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 541.202(f).

Defendants argue that the summary-judgment evidence shows that Plaintiffs are/were exempt under the administrative exemption because each Plaintiff earned a base salary of no less than $455 per week, in addition to field bonuses; performed non-manual work directly related to the management or general business operations of EVO and/or its customers' businesses; and their primary duty as EVO Field Engineers involved the exercise of discretion and independent judgment on significant matters.

8

With respect to the salary requirement, Plaintiffs do not contest that they met the salary requirement for the administrative exemption.  (Document No. 76, p. 34).

As to the remaining factors, upon this record, while Plaintiffs and Defendants point to the same type of primary job duties/functions of Field Engineers, they differ on the inferences to be drawn from those duties and the characterization of how those duties relate to the management or general business operations of EVO or its customers.  They also differ in opinion regarding whether the primary duty of a Field Engineer includes the exercise of discretion and independent judgment with respect to matters of significance.  Defendants argue that the summary-judgment evidence shows that Plaintiffs primary duty as Field Engineers consists of the performance of non-manual work directly related to the management or general operations of EVO or its customers because the Field Engineers often were the sole on-site representative of EVO managing the entire downhole camera process. In this capacity, Field Engineers engaged in pre-planning activities with the client representative and others on-site prior to the start of the job, and then, in a trailer-work setting, when running the camera, directly interfaced with EVO's customers and others, in real time, annotating the data and making recommendations, as the data was being recorded to the EVO customer representative.  In addition to the on-site operational support to EVO and its customers, Field Engineers engaged in promotional and sales activities.  Defendants further argue that the evidence shows that the primary duty of Field Engineers involved the exercise of discretion and independent judgment on significant matters and point to evidence that each job was different and the Field Engineers had significant autonomy and independence.  In contrast, Plaintiffs describe their primary job duties differently. Plaintiffs argue that the evidence shows that the primary duty of a Field Engineer is to provide the product (data) that EVO provides its customers.  Plaintiffs characterize

9

the downhole video equipment as tools and the work as manual and contend that this work required little discretion and independent judgment.

In support of their characterization of Plaintiffs' duties as being linked to its management or business operations as well as its customers, Defendants point to deposition testimony of Plaintiffs Arroyo and Jones that the work is important to EVO's customers. *See e.g.* Deposition of Arroyo (Document No. 74-6, p. 15); Deposition of Jones (Document No. 74-9, p. 15). They also cite the testimony of Arthur White, U.S. Land Operations Manager for EVO, who testified that while Field Engineers engaged in some manual work such as rigging up, rigging down, and maintaining the video camera equipment, overall they were primarily engaged in highly specialized work in producing the downhole camera services for EVO and its customers. He testified that Field Engineers are often on the job alone, and that that the company representative relies on the Field Engineer for advice on what he or she is looking at and that this information assists EVO's customer in making a decision that might be worth millions of dollars. *See* White Deposition (Document No. 74-3, p. 3-4). Defendants also point to the testimony of Plaintiff Lee that Field Engineers are "rock stars" because they assist customers in "being able to see what's downhole and to figure out what is going on" and represent EVO from start to finish of a job. *See Lee Deposition* (Document No. 74-8, p. 4, 10). Defendants point to evidence that Field Engineers participate in pre-planning activities, like making recommendations to the client. For instance, Plaintiff Hobbs testified that he would make recommendations to the client about the water and would try to persuade them to try something different. *See* Hobbs Deposition (Document No. 74-1, p. 22-23). Field Engineers communicate and coordinate with the company representative, the company man, and the wireline engineer. *See* e.g. White Deposition (Document No. 74-3, p. 3, 7, 13) & Hobbs Deposition

(Document No. 74-1, p. 21-23); Jones Deposition (Document No. 74-9, p. 7). Field Engineers participate in safety meetings where potential hazards were identified and recommendations were made before the start of job, and they had authority to issue stop-work orders. *See e.g,* Hobbs Deposition (Document No. 74-1, p. 27-28); White Deposition (Document No. 74-3, p. 7); Lee Deposition (Document No. 74-8, p. 14-15). Field Engineers typically work in a logging truck. The logging truck has a bench and power source, with a table, camera equipment computer and printer. *See* 2018 Sutherlin Deposition (Document No. 74-2, p. 14). While running the video, Arthur White testified that the Field Engineer makes annotations, which may be streamed live to another office and another engineer, and makes recommendations. *See* White Deposition, (Document No. 74-3, p. 8). With respect to the annotation of the video for the customer, Troy Sutherlin testified that the annotation requires some sort of interpretation. After filming is complete, the Field Engineer rigs down the equipment, completes paperwork for the job ticket, completes the job log, and makes a flash drive of the data for the client. *see* White Deposition (Document No. 74-3, p. 8-9). Another job duty of Field Engineers is sales. *See* Hobbs Deposition (Document No. 74-1, p. 32-40, 44, 45); Arroyo Deposition (Document No. 74-6, p. 9-11).

On the factor of exercise of discretion and independent judgment on matters of significance, Defendants point to evidence showing that Field Engineers exercise discretion and trouble-shooting and problem-solving skills in interacting onsite with EVO's customers and others because circumstances are never the same. *See e.g.* 2018 Sutherlin Deposition (Document No. 74-2, p. 9); White Deposition (Document No. 74-3, p. 3, 7, 11-12); Arroyo Deposition (Document No. 74-6, p. 16-18, 20); Lee Deposition (Document No. 74-8, p. 6-9, 12-13, 17, 19, 22). As described by Plaintiff

Lee, Field Engineers have input in formulating a plan that EVO is going to execute and they require little to no direction.  Lee Deposition (Document No. 74-8, p. 17, 19, 22).

Nonetheless, Plaintiffs have pointed to evidence heavily in their favor on these factors. Plaintiffs counter that they are not exempt under the administrative exemption because they did not perform non-manual work directly related to the management or general-business operations of EVO or its customers' businesses but rather performed manual labor, rigging up and down the video camera equipment on location, producing the video which is the product that EVO provides to its customers, and dropping off sales materials about EVO's services to potential clients.  Defendant Francis Neill testified that the most important job of a Field Engineer is to record down-hole video and to secure the data for the customer.  *See* Neill Deposition (Document No. 76-14, p. 12).  As described by Plaintiff Lee, his job was to run tools (the video camera) in the field and provide the video to the customer.  *See* Lee Deposition (Document No. 76-12, p. 11-13). Plaintiffs contend that the major work of a Field Engineer is primary manual labor, i.e carrying the tools, getting everything rigged up, and helping the third-party company get tools in the well bore.  *See* 2018 Sutherlin Deposition (Document No. 76-17, p. 25).  Troy Sutherlin testified that a Field Engineer could not do the job if he or she could not do manual labor.  *See* 2018 Sutherlin Deposition (Document No. 76-17, p. 53).   Plaintiffs point to testimony that Field Engineers did not engage in preplanning activities like pre-job checks.  *See e.g.,* 2018 Sutherlin Deposition (Document No. 76-17, p. 22); Arroyo Deposition (Document No. 76-16, p. 29); Jones Deposition (Document No. 76-11, p. 12-13, 21).   Plaintiffs point to testimony that everyone involved participated in safety meetings and everyone had the authority to  issue a work-stop order.  *See e.,g.* Hobbs Deposition (Document No. 76-13, p. 8, 12-13); Jones Deposition (Document No. 76-11, p. 13-14P; Arroyo Deposition

12

(Document No. 76-16, p. 35). Troy Sutherlin testified that, before the Field Engineer arrives for a job, the pump is already there, the water is set, and the wireline is there and rigged up. The Field Engineer would get rigged up, turn the camera on, obtain the data, turn off the camera, give the customer an invoice, and leave the location. *See* 2018 Sutherlin Deposition (Document No. 76-17, p. 25, 37-38, 41); Lee Deposition (Document No. 76-12, p. 4-5). As to autonomy and discretion on-site, Plaintiff Arroyo testified that Greg Linville was the Field Engineer who ran the jobs, including communicating with rig people and engineers about the job, and that Linville would pass information on to Arroyo so that he could go out and do the job. Arroyo testified that he could not go out on location without this information from Linville, and that if any adjustments were made on location, the decision would be made by the engineer or a company engineer and not by him. *See* Arroyo Deposition (Document No. 76-16, p. 37-39, 53-54). According to Arroyo, the client directed where it wanted him to look and what it wanted him to focus on. *See* Arroyo Deposition (Document No. 76-16, p. 45). Arroyo testified that it was "very rare" for him to be asked to render an opinion. He annotated the video and made minimal decisions. *See* Arroyo Deposition (Document No. 76-16, p.6-7, 13-16, 21, 23, 27-29.) Likewise, Plaintiff Lee testified that the client's employee sits next to him while he operates the video, and when the image is not obvious, he relies heavily on the client. *See Lee Deposition* (Document No. 76-12, p. 6-8). Plaintiff Jones testified that he watches the monitor and shows the client on the monitor what is in the hole so the client can ascertain what he thinks is wrong. He testified that he could not determine what was going on in a wellbore. He testified that operating the video and showing somebody what is actually happening are two different things. *See* Jones Deposition, 76-11, p. 5-7, 9, 13, 15). Plaintiff Jones testified that Troy Sutherlin, his manager, explained the job to the customer. Jones's job was to run the video camera. *See* Jones

13

Deposition (Document No. 76-11, p. 11, 17). Plaintiff Lee described his job as "somewhat technical, and parts of it are pretty dumb, like manual. Everything leading up to running the tool into the hold. It's all manual and everything after rigging up, rigging down." *See* Lee Deposition, Document No. 76-12, p. 10-11). Plaintiff Hobbs testified that the consultant or engineer would tell him how deep to go on a particular job. *See* Hobbs Deposition (Document No. 76-13, p. 8-10). Francis Neill testified that Field Engineers "would be advising the company man on actions, what he saw. So at the end of the day, the ultimate decision is the company man's decision what to do." Francis Neill testified that the company man is responsible for every aspect of that well. *See* Neill Deposition (Document No. 76-14, p. 34-35, 54-55). Arthur White testified that the company man decides what to record. *See* e.g., White Deposition (Document NO. 76-15, p. 20-21). Troy Sutherlin testified that a Field Engineer might give an impression about what is being captured on video but the data goes to the company man, the company, and their completion engineers and they make decisions. He testified that Field Engineers did not have authority to make changes to a job plan without getting authorization first. Field Engineers would have to contact him from onsite locations before changes could be made. *See* 2018 Sutherlin Deposition, Document No. 76-17, p. 28-29, 34-35, 42). Plaintiff Jones testified that his job was to come in and run video. *See* Jones Deposition (Document No. 76-11, p. 12-13, 21). He never gave a recommendation about how to prep a well. The company man made the decision. *Id.* After a job was complete, the Field Engineers gave the video with the data on a thumb drive to the customer. *See* 2018 Sutherlin Deposition (Document No. 76-17, p. 48). Field Engineers did not coordinate jobs or sales or supervise employees. Arthur White testified that, as U.S. Land Operations Manager for EVO, he coordinated jobs, sales, and supervised Field Engineers. *See* White Deposition (Document No. 76-15, p. 4). Arthur White and the Plaintiffs

testified at their depositions that Plaintiffs were responsible for loading and unloading equipment

on location, rigging up and down the video equipment, and working in the shop. Shop duties include

cleaning the tools, and cleaning the shop. *See e.,g.* White Deposition (Document No. 76-15, p. 10);

Lee Deposition (Document No. 76-12, p. 17-18); Hobbs Deposition (Document No. 76-13, p. 27).

Sales were not the primary responsibility of a Field Engineer. *See, e.g.,* 2018 Sutherlin Deposition

(Document No. 76-17, p. 29); Neill Deposition (Document No. 76-15, p. 22-23, 25). Field Engineers

put together EVO pamphlets and dropped off literature at oil field companies, but they did not give

prices or quotes. *See* Jones Deposition (Document No. 76-11, p. 18-19); Hobbs Deposition

(Document No. 76-13, p. 17-23); Arroyo Deposition (Document No. 76-16, p. 31-34); 2018

Sutherlin Deposition (Document No. 76-17, p. 20). None of the Plaintiffs were involved in

management duties at EVO or of its customers. *See e.g,* Neill Deposition (Document No. 76-14, p.

234. 30-31). Plaintiff Hobbs testified that he was a manager in name only and that he had no

management duties. He did not hire or fire, change the rate of pay, or direct employees and had no

say in the operation of the company. *See e.g,* Hobbs Deposition (Document No. 76-13, p. 5-6, 14-15,

28-29); Plaintiff Hobbs' Objections and Answers to Defendant's First Set of Interrogatories #10

(Document No. 75-6); 2018 Sutherlin Deposition (Document No. 76-17,  44); Neill Deposition

(Document No. 76-14, p. 30-31, 42, 43, 45-47); White Deposition (Document No. 76-15, p. 15-16).

Field Engineers could not authorize an expenditure for EVO. *See e.g.* Neill Deposition (Document

No. 76-14, p. 42). Arthur White testified that the Field Engineers did not manage other employees,

did not set and adjust rate of pay for other employees, did no performance evaluations, did not

handle employee grievances or complaints, and did not discipline other employees. *See* White

Deposition (Document No. 76-15, p. 28-32). *See also* 2018 Sutherlin Deposition (Document No.

76-17, p. 30-33). Field Engineers did not participate in planning decisions or budgeting decisions for EVO. *See e.g,* 2018 Sutherlin Deposition (Document No. 76-17, p. 36-37). Troy Sutherlin testified that if there was a complaint or dispute with a client on location concerning billing or operations for recording the downhole video, the Field Engineer could not represent EVO. *See* 2018 Sutherlin Deposition (Document No. 76-17, p. 36).

Here, as the above examples highlight, the record contains conflicting evidence as to whether Plaintiffs' primary duties as Field Engineers were "the performance of office or nonmanual work directly related to the management or general business operations" of EVO or its customers and there is also conflicting evidence regarding the amount of discretion and independent judgment that Plaintiffs as Field Engineers were expected to exercise in dealing with matters of significance to EVO and its customers. Plaintiffs say one thing, and Defendants sometimes say another. There exists plentiful evidence from which a fact finder could determine that Plaintiffs' duties were primarily manual and intertwined with the services and data that EVO provides to its customers, and not to the management or general business operations of EVO or its customers, and that they did not exercise discretion and independent judgment on significant matters. *See Dewan,* 858 F.3d at 340. Because the court cannot resolve credibility issues or weigh the evidence, the court is in no position to rule as a matter of law that the administrative exemption for the FLSA applies to the Plaintiffs. Therefore, Defendants' summary-judgment motion on the administrative exemption should be denied.

### B. Highly-Compensated-Employee Exemption

An employee is exempt as a "highly compensated employee" if (1) the employee receives total annual compensation of at least $100,000; (2) the employee's "primary duty includes

performing office or non-manual work"; and (3) the employee "customarily and regularly performs anyone or more of the exempt duties or responsibilities of an . . . administrative . . . employee." 29 C.F.R. § 541.601. Here, with respect to the annual- compensation requirement, Plaintiffs agree that Plaintiffs Hobbs and Jones met the earning requirement and that Plaintiff Lee met the salary requirement for at least one year. (Document No. 76, p. 28). An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Manual labor is work involving physical skill and energy and repetitive operations with the hands. 29 C.F.R. § 541.3(a). The skills and knowledge required for the performance of manual labor are acquired through apprenticeships and on-the-job training, rather than a prolonged course of study like one a lawyer or doctor would complete. *Id.* Examples of those who primarily perform manual labor include carpenters, electricians, mechanics, plumbers, iron workers, operating engineers, longshoremen, and construction workers. *Id.* Factors that are relevant in determining an employee's primary duty include the "relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed. 29 C.F.R. § 541.700(a). Manual labor may be considered exempt of it is performed incidentally to non-manual labor. "Work that is 'directly and closely related' to the performance of exempt work is also considered exempt work." 29 C.F.R. § 541.703(a). Employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary-duty requirement. 29 C.F.R. § 541.700(b). Here, Defendants argue that the Plaintiffs' primary duties consisted of  non-manual labor, and that Plaintiffs customarily and regularly performed one or more of the exempt duties or responsibilities of an

administrative employee. But as discussed above, there is a genuine dispute as to whether the Plaintiffs' primary duties included performing office or non-manual work and whether Plaintiffs "customarily and regularly perform[ed] any one or more of the exempt duties or responsibilities of an administrative employee." Thus, upon this record, Defendants' motion for summary judgment as to Plaintiffs' exempt status under the highly- compensated-employee exemption should be denied.

### C. Outside-Sales Exemption

Defendants argue that Plaintiffs are exempt from the FLSA's overtime requirements under the outside-sales exemption because Plaintiffs regularly promoted EVO's business and were regularly engaged in sales work as part of their job as Field Engineers. Plaintiffs conversely argue that their primary duty was not sales for EVO.

The outside-sales exemption exempts "any employee employed . . . in the capacity of outside salesman." 29 U.S.C. § 213(a)(1); *Zapata v. Flowers Foods Inc.*, No. 4:16-cv-676, 2016 WL 8739196, *5 (S.D.Tex. Dec. 20, 2016). The exemption covers any employee whose primary duty is making sales or obtaining orders or contracts and who is customarily and regularly away from the employer's place of business in performing such primary duty. *See* 29 C.F.R. § 541.500(a).

Here, Defendants point to evidence showing that Plaintiffs' job duties as Field Engineers included making sales. *See e.g,* Hobbs Deposition (Document No. 74-1, p. 14-16. 32-40-45); Arroyo Deposition (Document No. 74-6, p. 9-11). Plaintiffs counter that, while sales might have been a part of their job, it was not their primary duty. *See* e.g, Neill Deposition (Document No. 76-15, p. 22-23); 2018 Sutherlin Deposition (Document No. 76-17, p. 29). Plaintiffs further point to evidence showing that the Field Engineers put together pamphlets about EVO for potential customers and dropped the materials off at potential oil field companies when their primary work was slow. *See*

*e.g,*. Arroyo Deposition (Document No. 76-16, p. 31-34); Hobbs Deposition (Document No. 76-13, p. 17-23); Jones Deposition (Document No. 76-11, p. 18-19).     Upon this record, viewing the evidence in favor of the non-moving party, the evidence does not show that Plaintiffs' primary duties were making sales. Defendants have failed to meet their burden to show that Plaintiffs were exempt from the requirements of the FLSA under the outside-sales exemption.

In conclusion, viewed in the light most favorable to the Plaintiffs, a reasonable jury could not conclude that Plaintiffs were exempt employees under the administrative, highly compensated employee and/or outside sales exemptions. Thus Defendants' Motion for Summary Judgment should be denied.

## IV.  Defendants' Motion for Partial Summary Judgment

Plaintiffs claim that "Defendants' violation of the FLSA have been repeated, willful, and intentional.. . .Defendants willfully and purposefully failed to pay overtime wags to Plaintiffs and other employees similarly situated even though they were non-exempt employees and were not managers or supervisors or subject to any other exemption under the law.  The actions of defendants were not reasonable and there is no reasonable ground for believing that their acts were in conformity with the FLSA." Plaintiffs First Amended Complaint (Document No. 48, ¶ 76).  Defendants argue that the record contains no support for this allegation that Defendants, either collectively or individually, willfully violated the FLSA. Defendants argue that Plaintiffs have failed to present any evidence showing that Defendants actually knew they were violating the FLSA or that Plaintiffs or other Field Engineers complained about their compensation structure or lack of overtime pay, and that Defendants ignored their complaints.  Rather the evidence shows that EVO relied on its

knowledge of the Field Engineer position and its understanding of the FLSA exemptions when it classified Field Engineers, including Plaintiffs as exempt under the FLSA.

An FLSA claim is normally subject to a two-year statute of limitations, except that a three-year limitations period applies if a plaintiff demonstrate a willful violation by the employer. *See* 29 U.S.C. § 255(a). "The Plaintiff bears the burden of demonstrating willfulness." *Zannikos*, 605 F.Appx. at 360. Plaintiffs can demonstrate that an employer willfully violated the FLSA by showing the employer "knew or showed reckless disregard for . . . whether its conduct was prohibited by the [FLSA]." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003). "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Zannikos* , 605 F.App'x at 360. "An employee must show that the employer had some reason to know that its conduct violated the FLSA beyond mere ignorance of the law." *Pye v. Oil States Energy Servs., LLC*, 233 F.Supp.3d 541, 564 (W.D.Tex. 2017)(quotation and citation omitted). "[Employers act willfully when they know their pay structures violate the FLSA or ignore complaints brought to their attention." *Mohammad v. Nwabuisi*, 605 F.App'x 329, 332 (5th Cir. 2015)(citing *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 & n. 24 (5th Cir. 2009).

Here, Plaintiffs' argument that Defendants willfully violated the FLSA is based on its assertion that Defendants' representatives show a combination of no knowledge, limited knowledge, and incorrect knowledge of the FLSA, which Plaintiffs maintain is tantamount to reckless disregard of the FLSA. Plaintiffs point to evidence showing that Defendants' representatives and executives had either no knowledge, or very limited knowledge, of the FLSA. *See e.g. Thursby* Deposition (Document No. 77-3, p. 4-5); White Deposition (Document No. 77-4, p. 4, 7-8); 2018 Sutherlin

20

Deposition (Document No. 77-5, p. 10); Neill Deposition (Document No. 7706, p. 3-8, 11-12); Copeman Deposition (Document No. 77-8, p. 13-19, 24-31). According to Plaintiffs, this shows that, while Defendants knew they were required to comply with the FLSA, they failed to conduct any meaningful analysis of the requirements of the FLSA.

Upon this record, there is insufficient evidence that Defendants willfully violated the overtime provisions of the FLSA. There is no evidence of complaints by Plaintiffs or other Field Engineers about compensation. Likewise, there is no evidence of prior Department of Labor investigations of Defendants or lawsuits filed against Defendants concerning wage disputes. Plaintiffs have not set forth sufficient evidence that advances the allegations made in the First Amended Complaint such that there exists a genuine issue of material fact as to willfulness. Thus Defendants' Motion for Partial Summary Judgment should be granted.

## V. Conclusion and Recommendation

The summary-judgment evidence shows there remains a genuine dispute of material fact whether Plaintiffs are exempt from overtime wages. It also shows there is no genuine dispute surrounding whether Defendants willfully violated the FLSA. The Magistrate Judge therefore

RECOMMENDS that Defendants' Motion for Summary Judgment (Document No. 74) be DENIED and that Defendants' Motion for Partial Summary Judgment (Document No. 75) be GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(c), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking

factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this __15th__ day of __February__ , 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE