Case 4:16-cv-00770 Document 132 Filed on 03/19/20 in TXSD Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
March 19, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEROD HOBBS, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-00770 |
| | § | |
| EVO INCORPORATED, *et al.*, | § | |
| Defendants. | § | |

**ORDER**

Pending before the Court is Plaintiffs' motion for attorneys' fees (Doc. No. 124), Defendants' response (Doc. No. 128), Plaintiffs' reply (Doc. No. 130), and Defendants' sur-reply (Doc. No. 131).

**I. Attorneys' Fees**

The Plaintiffs have attached, in support of their attorneys' fees request, a compilation of fee rate requests in labor and employment cases as attorneys' fees as an exemplar of the fees charged in this area. The Court, while finding this informal compilation to be interesting, finds this survey to be neither scientific nor issue dispositive. Defendants complain that the compilation includes fees from other parts of Texas—which it no doubt does. They also complain that the fees also include attorneys' fees from attorneys with big firms—which is also true for a number of the listed lawyers. The Court, however, cannot accept the conclusion Defendants draw from this latter observation. Their premise is that attorneys from big firms inherently deserve to have courts recognize larger billing rates in fee award situations because "small firms do not bear the same

1

overhead expenses." (Doc. No. 128 at 20). This Court finds that argument to be totally unsupportable.[1]

An award of attorneys' fees is based upon the reasonable and necessary costs of providing quality representation to one's clients. Solo practitioners, small firm lawyers, and large firm lawyers can all achieve this standard depending upon their abilities and dedication to their clients and the case at hand. A reasonable fee is not dependent on what a firm must recover to pay their overhead. What a firm chooses to pay their attorneys or assistants or paralegals or to pay for firm retreats or for recruiting trips and parties is completely irrelevant. Indeed, it is interesting to note that two of the attorneys cited in Plaintiffs' informal survey are two lawyers from the Defendants' own law firm in a case in which they represented an oilfield service company in a Title VII suit. According to the firm's website, both lawyers also handle FLSA cases. One charged $625 an hour in 2015, while the other charged $345 as a third-year lawyer in 2015. These rates have no doubt increased in the last 4-5 years, yet the combined experience of those two attorneys does not equal the experience of Plaintiffs' counsel herein.

This Court does not cite these examples as authority for any of its rulings herein; it merely points out that good lawyers come in all races, genders, and even experience levels, and the fact that one hails from a big firm or a small firm does not denote or guarantee the quality and/or efficiency of any one individual, nor does it address the fact that some attorney/client relationships allow for either a higher or discounted rate. None of these factors control the issues before the Court, except to demonstrate that this Court will not automatically find larger fees for a big firm lawyer, nor will it automatically minimize fees for a small firm lawyer. Further, the Court is not

---

[1] The Court is not unaware that Defendants have actually found rulings from at least two courts here in the United States which appear to adopt that proposition. To the extent these opinions differ from this order, one can assume this Court has rejected that premise.

2

suggesting that a comparison between the fees quoted above from that Title VII case are dispositive of the issues here. The Court is suggesting, however, that under most circumstances a fee application (while guided by the well-known standards) is still case specific, and generalizations such as the one made by the Defendants herein are totally misplaced.

That being said, Defendants' analysis of the law controlling the award of attorneys' fees is on target. A court calculates the "lodestar" by multiplying the hours reasonably spent by an appropriate hourly rate that is reasonable in the community. (Here, Defendants contest both the hours and the rate). Next, a court applies the factors set out in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors are used to determine if the lodestar rate should be increased or decreased or fixed as is, and they include:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717-719. To the extent these factors are duplicative of the lodestar factors, they are not counted twice.

Initially, the Court considers the rate. It is somewhat important to note that the Plaintiffs indicated in discovery that their original attorney/client fee agreement was a contingent fee agreement. Counsel later represented that his hourly rate was $450, but then in subsequent communications with Defendants raised that figure to $650—perhaps based upon the informal survey he obtained and attached to his pleadings. Whatever the reason for that increase, the Court rejects that figure as being unreasonable and finds, given the prevailing rates in this community,

that the $450 hourly figure is eminently reasonable. It certainly is a figure that Defendants cannot question in good faith—given the nature, circumstances, and history of this case weighed against the prevailing fees in this community.

The next lodestar factor is the hours spent. Defendants argue quite adamantly that no fees should be awarded due to the lack of exact contemporaneous time keeping records being kept by Plaintiffs' counsel.[2] Counsel admitted that some of his records were deleted during a computer updating process, but nonetheless has provided lengthy records which match the progression of this case. While the Court agrees with many of the specific objections, as discussed below, it notes that the Defendants object to 614.3 hours—over 85%—of the 699.1 hours billed. While the Court found some of the hours billed to be excessive (and has made the appropriate adjustments), it also finds the objections to likewise be excessive. For example, it seems like Defendants claim that an entry is unreasonable, with little or no explanation, whenever they are at a loss for a more worthwhile objection. In that regard, it would be interesting to see Defendants' legal bills that cover these same events for comparison. Nevertheless, there are aspects of even the "unreasonable" objections with which the Court agrees and addresses those below in its discussion of the more specific objections. (For example, it agrees with the objection as to travel time and has made the appropriate adjustments). That being said, the Court overrules the global objections. Plaintiffs have provided specific and cogent billing records and, regardless of whether they emanated from counsel's original records or were recreated after the case concluded (or after the computer system mishap), they accurately follow the progress of the case and reflect the work done, the date the work was performed, and provide a description of each task and the time that

---

[2] This case has been plagued by less than meticulous record keeping by both sides.

4

was spent on each task. The Court finds that overall these records comply with the dictates set out by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

Despite overruling Defendants' global objections, the Court has found merit with some of the more specific objections to certain time entries. Consequently, it sustains in-part and overrules in-part Defendants' objections to those claims. More specifically, Defendants claim that even the records now before the Court contain various faults, including: 1) billing for administrative tasks; 2) unreasonable or excessive billing; 3) fees that are either raised or lowered from those noted in prior drafts provided to defense counsel; 4) fees for unsupportable claims or claims Plaintiffs lost; and 5) billing full time for travel (which according to the records is primarily between Fort Worth and Houston and back).

The Court also agrees with some of Defendants' other specific complaints—although not to the extent that the objections have been made. For example, it has reviewed the fee application line by line and has granted objections to billing (at a lawyer's rate) for tasks which are clearly administrative.[3] It has found that changing the amount of time from one draft to the next is not acceptable and therefore has only considered the lower of those two times. Fees for pursuing claims that clearly had no real hope of success (with the exception of the two mentioned below in the *Johnson* discussion) have also been deducted as has the time on tasks which the Court has found to be spent on meritorious claims, but which was excessive. That being said, this Court has sustained Defendants' objections to 97.63 hours, which leaves the total acceptable billing time to

---

[3] Plaintiffs' counsel has pointed out the Defendants' position as to administrative expenses is somewhat hypocritical. They point out that the Defendants on the one hand complain about the billing rate because they assume Plaintiffs' counsel's small firm overhead is lower because of his lack of support staff and then on the other hand complain about certain hours that he expended doing certain tasks because his practice does not have the support staff to do these tasks. While the Court is sympathetic to Plaintiffs' position, it nonetheless finds that purely administrative tasks should not be billed at an attorney's rate.

be 601.47 hours. In conclusion, the Court finds the appropriate lodestar billing rate to be $450 per hour and the number of hours to be 601.47.

Having found the lodestar figures, the Court proceeds to consider the *Johnson* factors. The Court finds that the *Johnson* factors, with one exception, do not impact the ultimate fee calculation. The time and labor to represent four clients instead of one was not significantly increased; nor was the difficulty in presenting the case. Indeed, the Plaintiffs all told different versions (from their work viewpoint) of the same facts and in many ways filled in certain areas in which one or more did not have personal knowledge.

The Court finds that while Plaintiffs' counsel performed professionally and effectively, the case presented no novel or unusual difficulties to overcome, and the skill required was only that of a seasoned trial professional. The Court has taken factors four (preclusion of other employment), five (customary fees in the community), and six (nature of the fee agreement) in its calculation of the hourly rate it used in its above lodestar analysis. The Court finds none of the following factors (time limitations imposed by the client; amount involved and ultimate result; experience, reputation, and ability of the attorney; the undesirability of the case; the nature and length of the attorney/client relationships; and similar awards) to be compelling. Therefore, the Court finds no reason to adjust the fees in question in either an upward or downward direction based on those factors. The Court finds that *Johnson* factor eight (amounts involved and the results achieved), does require an adjustment downward.

This Court has ruled for the Plaintiffs on FLSA liability and awarded damages. (Doc. No. 121). Nevertheless, the Plaintiffs' consistent position that each Plaintiff was entitled to time and a half as opposed to .5 of the multiplier was clearly not warranted as it was not even supported by most of the evidence that the Plaintiffs themselves proffered. It was clear to the Court that this

question was not even a close call, despite the fact that it was hard fought. Furthermore, the costs expended on both sides concerning a putative class action was again fruitless and needlessly exacerbated the fees and costs expended by both sides. This Court cannot help but find that the insistence in pursuing these two positions overly complicated the case and, in all likelihood, prolonged it as well. The Court, therefore, pursuant to *Johnson*, reduces the hourly rate from $450 to $400 to compensate for this *Johnson* factor.

Defendants additionally argue that this Court should further depart downward because one defendant was awarded a summary judgment and another a directed verdict. Those rulings were certainly important for the parties involved and their presence in the lawsuit no doubt added to the burden of defense counsel, but the Court has already considered those factors in addressing the hour portion of the lodestar analysis.

Therefore, the Court finds the applicable fee to be $400 per hour and the hours to be 601.47. Based upon this analysis, the Court awards attorneys' fees in the amount of $240,588. The Court does not award attorneys' fees for post-trial motions concerning fees and costs because an overwhelming amount of the briefing was caused by Plaintiffs' own lack of specific and contemporaneous billing records and their somewhat moving target as to the fees being requested. Even if most of the cause was a computer update glitch, it was not caused by Defendants and they should not be penalized for factors over which they have no control. The Court will consider fees on appeal, if any, once the case is resolved on appeal.

## II.     Costs

Plaintiffs request a total of $43,700.31 in various costs. Defendants agree that Plaintiffs are entitled to recover costs incurred in filing fees, trial transcripts, and certain deposition costs, but object to the remainder of Plaintiffs' claimed costs. Under Defendants' objections, Plaintiffs

7

should receive $17,482.28—$400 from filing fees, $3,675.25 from trial transcripts, and $13,407.03 from deposition costs. Before ruling on the objections, the Court must determine what types of costs are recoverable under the FLSA. Under the language of the statute, a prevailing plaintiff is entitled to recover the "costs of the action." 29 U.S.C. 216(b). The parties dispute, and the Fifth Circuit has not yet decided, whether this language permits the prevailing FLSA plaintiff to recover all out-of-pocket costs, or only those taxable under 28 U.S.C. § 1920.

The Court finds Plaintiffs may only recover costs taxable under section 1920. The "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Cook Children's Medical Center v. The New England PPO Plan of General Consolidation Management Inc.*, 491 F.3d 266, 274 (5th Cir. 2007) (internal quotation marks omitted). While many district courts within the Fifth Circuit have held that the language in the FLSA permits recovery beyond the costs articulated in section 1920, only two federal circuit courts have held the opposite. *See Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997); *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988).[4] The Court agrees with these two appellate courts, as it does not find explicit statutory authorization to award costs beyond those articulated in section 1920. Plaintiffs have not lodged any objection beyond that they are entitled to all costs.

Broadly, under 28 U.S.C. § 1920, taxable court costs include:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

---

[4] *But see, e.g., Avila v. A Healthy Living Home Health Inc.*, 2018 WL 2323280 at *3 (S.D. Tex. March 2, 2018); *Dobson v. Timeless Restaurants, Inc.*, 2017 WL 1330164, at *7 (N.D. Tex. Apr. 11, 2017); *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 629-30 (W.D. Tex. 2015); *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 392 (S.D. Tex. 2016); *Mancia v. JJ Chan Food, Inc.*, 2016 WL 4468092, at *4 (N.D. Tex. June 21, 2016); *Castro v. Precision Demolition LLC*, 2017 WL 6381742, at *10 (N.D. Tex. Dec. 14, 2017).

>(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>(5) Docket fees under section 1923 of this title; and
>(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

With these limitations in mind, the Court will address Defendants' objections.

### 1. Whether Plaintiffs are Entitled to the Costs Related to Claims Against Defendants that Were Not Held Liable

Defendants' first objection is that Plaintiffs should not be permitted to recover costs related to the depositions of McBride and Thursby because Plaintiffs were unsuccessful in their actions against McBride and Thursby. Plaintiffs do not respond to this objection and as such concede this point. The Court agrees that, because Plaintiffs were not successful in their actions against McBride and Thursby, they should not be permitted to recover costs related to those depositions. Therefore, the Court sustains Defendants' objection and will adjust the award to remove the $3,726.19 associated with those depositions.

### 2. Whether Plaintiffs are Entitled to the Cost of Video-Taped Depositions

Defendants contend that Plaintiffs are not entitled to recoup the costs of videotaping the depositions of witnesses. "[V]ideo deposition costs are considered recoverable if they are 'shown to be necessary for use in the case under § 1920(2).'" *Gaspari v. FMC Techs., Inc.*, No. CV H-13 2353, 2016 WL 2659593, at *2 (S.D. Tex. May 5, 2016). Considering the transnational nature of this case, the Court believes that the three video depositions that Plaintiffs took were necessary for use in the case. Therefore, the Court overrules Defendants' objection.

### 3. Whether Plaintiffs are Entitled to Recoup Travel Costs

Plaintiffs seek $12,244.99 in various travel costs. Defendants contend that Plaintiffs are not entitled to recoup travel costs. The costs that Plaintiffs seek to recover constitute travel or lodging by either Plaintiffs themselves or their attorney. Neither of these cost categories are

9

recoverable under section 1920. Therefore, the Court sustains Defendants' objection and will adjust costs award by $12,244.99.

### 4. Whether Plaintiffs are Entitled to Recoup Uber Costs

Plaintiffs seek $402.98 in Uber transport costs. Defendants contend that Plaintiffs are not entitled to recoup these costs. As with the other travel costs, Uber rides by Plaintiffs' attorney are not recoverable under section 1920. Therefore, the Court sustains Defendants' objection and will adjust the costs award by $402.98.

### 5. Whether Plaintiffs are Entitled to Recoup Service Fees

Plaintiffs seek $5,123.80 in costs for private process servers. Defendants contend that Plaintiffs are not entitled to recoup these costs. "[A]bsent exceptional circumstances, the costs of a private process server are not recoverable under Section 1920." *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010). The Court finds exceptional circumstances existed justifying the costs of the private process servers. Some, if not all, of the Defendants in this matter were domiciled in the British Isles, and the Plaintiffs needed to properly provide service under the Hague Convention. While Defendants cite to an opinion from a court in this district declining to award fees in a similar situation, *see Chembulk Houston Pte. Ltd v. M/V MONTE ALEGRE*, No. CV H-15-714, 2018 WL 3756840, at *3 (S.D. Tex. Aug. 8, 2018), the Court in its discretion believes these are exceptional circumstances justifying the costs and overrules Defendants' objection. Therefore, Plaintiffs will be awarded $5,123.80 in costs for their process servers.

### 6. Whether Plaintiffs are Entitled to Recoup Delivery Charges

Plaintiffs seek $219.00 in costs for Federal Express delivery charges. Defendants contend that Plaintiffs are not entitled to recoup these costs. These costs are outside the scope of section 1920. *See Tempest Publ'g, Inc. v. Hacienda Records & Recording Studio, Inc.*, 141 F. Supp. 3d

10

712, 725 (S.D. Tex. 2015). Therefore, the Court sustains Defendants' objection and will adjust the costs award by $219.00.

### 7. Whether Plaintiffs are Entitled to Recoup Mediation Expenses

Plaintiffs seek $2,453.48 for expenses related to mediation. Defendants contend that Plaintiffs are not entitled to recover these costs. The Fifth Circuit has held that a district court abuses its discretion where it awards mediation expenses as taxable costs under section 1920. *Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt. Inc.*, 491 F.3d 266, 277 (5th Cir. 2007). Therefore, the Court sustains Defendants' objection and will adjust the cost award by $2,453.48.

### 8. Cost Summary

Therefore, considering the applicable law, the Court finds that Plaintiffs are entitled to $24,768.80 in taxable costs.[5]

## III. Conclusion

The Court awards attorneys' fees in the amount of $240,588.00 and court costs in the amount of $24,768.80. Said amounts will be included in the final judgment.

SIGNED at Houston, Texas this 19th day of March, 2020.

Andrew S. Hanen
United States District Judge

---

[5] If Plaintiffs are successful on any potential appeal and overturn this Court's ruling that a prevailing FLSA plaintiff is only entitled to recoup costs under section 1920, the Court finds that Plaintiffs' costs would be $40,070.69. This number represents the amount Plaintiffs originally sought less the deposition expenses of Thursby and McBride and the inexplicable $18.75 Uber fare to travel two blocks from Plaintiffs' hotel to the office of Defendants' attorneys. *See* (Doc. No. 128 at 28 n.15).